LKP GLOBAL LAW, LLP
ANDREW B. CHEN (SBN 210421)
1901 Avenue of the Stars, Suite 480
Los Angeles, CA 90067
Telephone: (424) 239-1890
Facsimile:  (424) 239-1882
Email: achen@lkpgl.com

Attorneys for Plaintiff
MARCUS HEDGPETH

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| MARCUS HEDGPETH, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF SAN JUAN CAPISTRANO, JULIE RYAN-JOHNSON, an individual, BONNIE DAVIS, an individual, <br><br> Defendants. | Case No.: 8:19-cv-02275 <br><br> COMPLAINT FOR COPYRIGHT INFRINGEMENT <br><br> DEMAND FOR JURY TRIAL |

Plaintiff Marcus Hedgpeth ("Hedgpeth"), by way of this Complaint against Defendants City of San Juan Capistrano ("City"), Julie Ryan-Johnson, and Bonnie Davis, (collectively "Defendants") allege as follows:

## NATURE OF ACTION

1.   This lawsuit for copyright infringement arises under the United States Copyright Act, 17 U.S.C. §§ 101, et seq., based on Defendants willful violation of

1
COMPLAINT

Hedgpeth's copyright in certain audiovisual materials titled "Large Animal Response Team Training for the Experienced Equestrian" (the "Copyrighted Work"), which provides students with training for large animal evacuation and sheltering process in emergency situations.  The Copyrighted Work was registered with the U.S. Copyright Office on December 26, 2017 with a Registration Number PAu 3-895-814.

2. Hedgpeth's copyright infringement claims are based upon Defendants' use of the Copyright Works in providing training for large animal evacuation and sheltering.

## JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 as this action is based on federal copyright law.

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

5. Jurisdiction and venue are also proper, among other reasons, because Defendants' willful infringing activities occurred in this judicial district, and Hedgpeth is a resident within this judicial district.

## THE PARTIES

6. Plaintiff Marcus Hedgpeth is an individual residing in Lake Forest, California.

7. Defendant City of San Juan Capistrano is a city located in Orange County, California.

8. Upon information and belief, Defendant Julie Ryan-Johnson is an individual residing at 28382 Paseo Establo, San Juan Capistrano, California 92675.

9. Upon information and belief, Defendant Bonnie Davis is an individual residing within Orange County with a mailing address of 31103 Rancho Viejo Road, #D2, San Juan Capistrano, California 92675.

## FACTUAL BACKGROUND

10. Plaintiff Marcus Hedgpeth ("Hedgpeth") is a retired police Captain with over 34 years of service. During his service, Hedgpeth has served as a mounted police officer and has trained other officers in horse safety, proper techniques and methods to load horses onto horse trailers. Hedgpeth created and developed curriculum as well as provided instruction relating to equestrian safety and training for over forty (40) years to numerous community colleges such as Rancho Santiago Community College District, Santa Ana College, and the South Bay Training Consortium (a group of several community colleges), government first-responder agencies such as Anaheim Mounted Police Officers, Garden Grove Mounted Police Officers, the Orange County Regional Mounted Unit, Orange County Sheriff's Department, Riverside Sheriff's Department, select members of the Orange and Anaheim Fire Departments, the California Mounted Officers Association (police officers, posse members, and volunteer personnel from law enforcement agencies throughout California), and Orange County Fire Authority, animal services agencies such as Orange County Animal Control, and Irvine Police Animal Services, and public and private groups within the California equestrian community.

11. In or around June 2008, Defendant Julie-Ryan Johnson ("Ryan-Johnson") approached Hedgpeth to train volunteers on emergency horse-handling and loading horses onto trailers (the "Program") for the City of San Juan Capistrano (the "City"). While Ryan-Johnson was a Doctor of Veterinary Medicine, she represented that she did not have the necessary expertise to conduct such training, but she was aware that Hedgpeth was an expert in the field. Ryan-Johnson stated that she had been authorized by the City to establish this program. Ryan-Johnson stated that Hedgpeth would be paid by the San Juan Capistrano Equestrian Coalition ("SJEC") a per-student fee to provide instruction for the Program.

12. In or around July 2008, Hedgpeth and Ryan-Johnson met multiple times with Michael Cantor ("Cantor"), San Juan Capistrano Emergency Services Manager, to discuss the instruction for the emergency horse-handling and horse-loading course to be offered by the City. Mr. Cantor confirmed that Ryan-Johnson was authorized to negotiate on behalf of the City. During the course of the conversations with Mr. Cantor and Ryan-Johnson, Hedgpeth learned the City had no disaster equine evacuation and sheltering program in place, and the City was not going to pay for any equipment, supplies, or any instruction, but rather these costs would be the responsibility of the SJEC.

13. In or around August 7, 2008, Hedgpeth and Ryan-Johnson discussed three (3) options for the creation of the curriculum and materials for the Program. The first option would require the City or SJEC to pay Hedgpeth on an hourly basis to create the Program, and the City or SJEC would own the Program. The second option would require the City or SJEC to pay Hedgpeth a flat fee to create the Program, and the City or SJEC would own the Program. The third option would require Hedgpeth to create the Program at his own expense, but Hedgpeth would retain all right, title, and interest to the Program and all associated audio, visual, and hard copy documents would remain Hedgpeth's property. Upon cancellation of the agreement between Hedgpeth and the Defendants, it was agreed that Defendants cannot use the Program and must return all training materials to Hedgpeth. In an August 11, 2008 meeting, Ryan-Johnson agreed to the third option for the Program creation. Hedgpeth formally memorialized the agreement in an email sent to Ryan-Johnson on August 12, 2008.

14. In or around October 1, 2008, the Program was completed by Hedgpeth and approved by the City of San Juan Capistrano Emergency Services Manager as part of City's Citizen's Emergency Response Team. As shown in Exhibit 1,

Hedgpeth's audio-visual presentation title page contained a copyright notice that the material was copyrighted with all rights reserved to Hedgpeth.

15. In or around June 7, 2009, Hedgpeth sent SJEC an invoice for providing instruction under the Program. After Hedgpeth taught four (4) training sessions, Ryan-Johnson notified Hedgpeth that SJEC was no longer going to pay Hedgpeth for teaching the Program.

16. On July 9, 2009, Hedgpeth sent Ryan-Johnson a letter notifying her that he was discontinuing instruction of the classes and reminding her that Ryan-Johnson, SJEC and the City could no longer use the program, and requested the return of all Program materials.

17. In or around July 2009, Hedgpeth notified Cantor that SJEC was no longer paying Hedgpeth and the Program would be immediately terminated. Cantor indicated that he wanted Hedgpeth to continue teaching the next scheduled Program in October 2009, and Cantor would make arrangements for the City to pay Hedgpeth for his services by having each student pay an instructional fee to Hedgpeth.

18. In or around March 25, 2013, Hedgpeth proposed to Cantor that due to the growth and current size of the Program, the City should consider splitting the Program into the Large Animal Response Team ("LART") and the Citizen's Emergency Response Team ("CERT"). Subsequently, Cantor informed Hedgpeth that LART would be split from the CERT program. Mr. Cantor's vision was to continue to grow LART across Orange County and eventually have it taken over by Orange County. Ryan-Johnson, however, disagreed with this vision and wanted to keep LART focused on the City and have the City and SJEC maintain control of LART.

19. In or around July 2013, Hedgpeth agreed with Cantor's vision and provided his full support of this expansion plan. Hedgpeth would continue to allow the City to use Hedgpeth's Program and would continue to teach the Program free of

charge provided that (a) Hedgpeth would continue to have input and be consulted concerning LART, (b) LART would focus on outreach to the entire Orange County Equestrian community, and (c) the LART Program instruction would expand across Orange County, with the Program being physically taught at various locations in the County to encourage county-wide equestrian participation.

20. In or around 2015, Cantor retired from the City. Subsequently, LART and CERT was managed by different City employees. Jacob Green ("Green") was eventually hired as the Assistant City Manager, and Lynn Mata ("Mata") was hired part-time as the Emergency Services Manager. Shortly thereafter, Ryan-Johnson informed Hedgpeth and other leadership members of LART that Mata would only communicate with them through Ryan-Johnson. This decision was later changed to include Bonnie Davis ("Davis"), the self-appointed leader of LART.

21. In or around October 9, 2017, LART was used to assist during the Canyon 2 Fire. The LART evacuation was response was not effective primarily due to the actions of Mata and Davis.

22. In or around October 30, 2017, Davis, Ryan-Johnson, Green, and Mata held a debriefing meeting with the LART volunteers. Hedgpeth had created a detailed outline and timeline for the Canyon 2 Fire and a critique with suggested areas of improvement ("Presentation"). Davis refused to allow Hedgpeth's Presentation to be shared or discussed in the debriefing meeting. As a result of the debriefing meeting, many LART volunteers left LART.

23. In or around November 21, 2017, LART leadership team who was involved with the Canyon 2 Fire was preparing for a meeting with the Director of the Orange County Animal Control. Davis informed Hedgpeth that only Davis, Ryan-Johnson and Ms. Mata would be attending the meeting. Hedgpeth informed Davis that his continued exclusion from discussions of the LART Program, a Program that he had exclusively created and exclusively taught for ten (10) years,

1  was inconsistent with his prior agreement with Mr. Cantor. The agreement required
2  that Hedgpeth be allowed to attend the meeting. Since the City did not comply with
3  the terms of the agreement, Hedgpeth notified the City that he would no longer be
4  providing LART instruction free of charge.

5       24.   Fearful that the City would misappropriate his Program, Hedgpeth filed
6  and secured copyright registration for the materials. On December 26, 2017, the
7  U.S. Copyright Office issued a certificate of registration for Hedgpeth's Program.

8       25.   In or around June 2018, Hedgpeth was informed that Ryan-Johnson
9  was planning on teaching a LART class. In an effort to cooperate and ensure
10 training consistent with Hedgpeth's instruction for the past ten (10) years, Hedgpeth
11 gave Ryan-Johnson limited permission to use Hedgpeth's Copyrighted Work only
12 for the August 2018 class on the condition that Ryan-Johnson only used the
13 Copyrighted Work and make no alterations, deletions, or modifications to the
14 Copyrighted Work. Hedgpeth was asked to assist with the practical portion of the
15 LART program. During the practical portion of the course, Hedgpeth discovered
16 that Ryan-Johnson had modified the Copyright Work by omitting certain materials.
17 When Hedgpeth questioned Ryan-Johnson, she informed him that she was
18 uncomfortable teaching the omitted material and expected the assistants of the
19 practical course to provide instruction on such material. Further, Hedgpeth observed
20 that Ryan-Johnson used his entire outline for the practical portion of the LART
21 training, including the listed course set-up, organization of the demonstration/testing
22 stations, assignment of an assistant instructor to each station, and presentation of the
23 ten (10) subtopics for horse handling and trailer loading contained in Hedgpeth's
24 copyrighted LART training course. Ryan-Johnson even copied the size and layout
25 of the student's sign-off and completion card utilized by Hedgpeth during LART
26 classes he taught over the last ten (10) years.

27
28

26. In or around October 9, 2018, Green notified the LART leadership that LART training would only occur within City limits. Mr. Green further stated that Ryan-Johnson represented in a prior meeting that Ryan-Johnson owned the copyright to the LART program.

27. On November 8, 2018, Hedgpeth informed Ryan-Johnson via email to cease all use of Hedgpeth's Copyrighted Work.

28. On November 20, 2018, Hedgpeth received a certified letter from the City notifying Hedgpeth that he was removed from the LART program.

29. On November 20, 2018, Hedgpeth sent a letter via certified mail requesting return of Hedgpeth's Copyrighted Work. The City ignored Hedgpeth's requests until after Hedgpeth hired legal counsel. On or about May 28, 2019, the City returned some of the Hedgpeth training material. To date, Ryan-Johnson and Davis have not returned Hedgpeth's copyrighted material in their possession.

30. Upon information and belief, Defendants have continued to use Hedgpeth's Copyright Work. In fact, the City quotes excerpts of the Copyrighted Work in letters sent to Hedgpeth and members of the Orange County equestrian community.

## FIRST CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT AGAINST CITY

31. Hedgpeth incorporates by reference paragraphs 1 through 30, as if fully set forth herein.

32. Hedgpeth is the owner of all its Copyrighted Work, which is an original work of authorship.

33. Hedgpeth has properly registered its written materials with the United States Copyright Office.

34. The City does not have any ownership interest in Hedgpeth's Copyrighted Works.

35. Without authorization from Hedgpeth, or any right under the law, the City has used Hedgpeth's Copyrighted Work to provide LART course instruction.

36. Without authorization from Hedgpeth, or any right under the law, the City has offered hands-on practical courses that utilize Hedgpeth's Copyrighted Works.

37. Without authorization from Hedgpeth, or any right under the law, the City has displayed Hedgpeth's Copyrighted Work in connection with the presentation of a LART course.

38. Upon information and belief, without authorization from Hedgpeth, or any right under the law, the City made unauthorized copies of Hedgpeth's Copyrighted Work.

39. Upon information and belief, without authorization from Hedgpeth, or any right under the law, the City has distributed Hedgpeth's Copyrighted Work in connection with the presentation of a LART course.

40. The foregoing acts of infringement by the City have been willful, intentional and purposeful, in disregard of, and indifferent to, Hedgpeth's rights.

41. As a direct and proximate result of the City's infringement of Hedgpeth's Copyrighted Works, Hedgpeth is entitled to damages as well as the City's profits pursuant to 17 U.S.C. § 504(b).

42. Alternatively, and at Hedgpeth's election prior to any final judgment being entered, Hedgpeth is entitled to the maximum amount of statutory damages provided by law, $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c).

43. Hedgpeth is further entitled to recover his attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505.

44. The City's conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Hedgpeth great and irreparable injury that cannot

fully be compensated or measured in money. Hedgpeth has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Hedgpeth is entitled to a preliminary and permanent injunction prohibiting further infringement of the Copyrighted Works.

## SECOND CLAIM FOR RELIEF

## COPYRIGHT INFRINGEMENT AGAINST RYAN-JOHNSON

45. Hedgpeth incorporates by reference paragraphs 1 through 44, as if fully set forth herein.

46. Hedgpeth is the owner of all its Copyrighted Work, which is an original work of authorship.

47. Hedgpeth has properly registered its written materials with the United States Copyright Office.

48. Ryan-Johnson does not have any ownership interest in Hedgpeth's Copyrighted Works.

49. Without authorization from Hedgpeth, or any right under the law, Ryan-Johnson created a derivative work of Hedgpeth's Copyrighted Work to provide course materials for the City to offer and present a LART course.

50. Without authorization from Hedgpeth, or any right under the law, Ryan-Johnson has displayed Hedgpeth's Copyrighted Work in connection with the presentation of a LART course.

51. Upon information and belief, Ryan-Johnson made unauthorized copies of Hedgpeth's Copyrighted Work without authorization from Hedgpeth, or any right under the law.

52. Upon information and belief, Ryan-Johnson distributed Hedgpeth's Copyrighted Work in connection with the presentation of a LART course without authorization from Hedgpeth, or any right under the law.

53. Without authorization from Hedgpeth, or any right under the law, Ryan-Johnson has conducted hands-on practical courses that utilize Hedgpeth's Copyrighted Work.

54. The foregoing acts of infringement by Ryan-Johnson have been willful, intentional and purposeful, in disregard of, and indifferent to, Hedgpeth's rights.

55. As a direct and proximate result of the Ryan-Johnson's infringement of Hedgpeth's Copyrighted Work, Hedgpeth is entitled to damages as well as Ryan-Johnson's profits pursuant to 17 U.S.C. § 504(b).

56. Alternatively, and at Hedgpeth's election prior to any final judgment being entered, Hedgpeth is entitled to the maximum amount of statutory damages provided by law, $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c).

57. Hedgpeth is further entitled to recover his attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505.

58. Ryan-Johnson's conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Hedgpeth great and irreparable injury that cannot fully be compensated or measured in money. Hedgpeth has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Hedgpeth is entitled to a preliminary and permanent injunction prohibiting further infringement of the Copyrighted Work.

## THIRD CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT AGAINST DAVIS

59. Hedgpeth incorporates by reference paragraphs 1 through 58, as if fully set forth herein.

60. Hedgpeth is the owner of all his Copyrighted Work, which is an original work of authorship.

61. Hedgpeth has properly registered its written materials with the United States Copyright Office.

62. Davis does not have any ownership interest in Hedgpeth's Copyrighted Works.

63. Without authorization from Hedgpeth, or any right under the law, Davis created a derivative work of Hedgpeth's Copyrighted Work to provide course materials for the City to offer and present a LART course.

64. Without authorization from Hedgpeth, or any right under the law, Davis has displayed Hedgpeth's Copyrighted Work in connection with the presentation of a LART course.

65. Upon information and belief, Davis made unauthorized copies of Hedgpeth's Copyrighted Work without authorization from Hedgpeth, or any right under the law.

66. Upon information and belief, Davis distributed Hedgpeth's Copyrighted Work in connection with the presentation of a LART course without authorization from Hedgpeth, or any right under the law.

67. Without authorization from Hedgpeth, or any right under the law, Davis has conducted hands-on practical courses that utilize Hedgpeth's Copyrighted Work.

68. The foregoing acts of infringement by Davis have been willful, intentional and purposeful, in disregard of, and indifferent to, Hedgpeth's rights.

69. As a direct and proximate result of Davis' infringement of Hedgpeth's Copyrighted Work, Hedgpeth is entitled to damages as well as Davis' profits pursuant to 17 U.S.C. § 504(b).

70. Alternatively, and at Hedgpeth's election prior to any final judgment being entered, Hedgpeth is entitled to the maximum amount of statutory damages provided by law, $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c).

71. Hedgpeth is further entitled to recover his attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505.

72. Davis' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Hedgpeth great and irreparable injury that cannot fully be compensated or measured in money. Hedgpeth has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Hedgpeth is entitled to a preliminary and permanent injunction prohibiting further infringement of the Copyrighted Work.

## FOURTH CLAIM FOR RELIEF

## VICARIOUS COPYRIGHT INFRINGEMENT AGAINST CITY

73. Hedgpeth incorporates by reference paragraphs 1 through 72, as if fully set forth herein.

74. Hedgpeth is the owner of all its Copyrighted Work, which is an original work of authorship.

75. Hedgpeth has properly registered its written materials with the United States Copyright Office.

76. Defendants do not have any ownership interest in Hedgpeth's Copyrighted Works.

77. Ryan-Johnson acted on behalf of the City in connection with the establishment and teaching of a LART course.

78. The City had the ability to exercise control over Ryan-Johnson and did exercise control over Ryan-Johnson with respect to the establishment and teaching of a LART course. Upon information and belief, that control extended to directing Ryan-Johnson and Davis to copy and create a derivative work of Hedgpeth's Copyrighted Work so that both the City, Ryan-Johnson, and Davis may profit and continue to profit from such infringement.

79. The City did nothing to stop Ryan-Johnson and Davis from the egregious infringement of Hedgpeth's Copyrighted Work.

80. The foregoing acts of infringement by the City have been willful, intentional and purposeful, in disregard of, and indifferent to, Hedgpeth's rights.

81. As a direct and proximate result of the City's infringement of Hedgpeth's Copyrighted Works, Hedgpeth is entitled to damages as well as the City's profits pursuant to 17 U.S.C. § 504(b).

82. Alternatively, and at Hedgpeth's election prior to any final judgment being entered, Hedgpeth is entitled to the maximum amount of statutory damages provided by law, $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c).

83. Hedgpeth is further entitled to recover his attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505.

84. The City's conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Hedgpeth great and irreparable injury that cannot fully be compensated or measured in money. Hedgpeth has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Hedgpeth is entitled to a preliminary and permanent injunction prohibiting further infringement of the Copyrighted Works.

## FIFTH CLAIM FOR RELIEF
## CONTRIBUTORY COPYRIGHT INFRINGEMENT AGAINST CITY

85. Hedgpeth incorporates by reference paragraphs 1 through 83, as if fully set forth herein.

86. Hedgpeth is the owner of all its Copyrighted Work, which is an original work of authorship.

87. Hedgpeth has properly registered its written materials with the United States Copyright Office.

88. Defendants do not have any ownership interest in Hedgpeth's Copyrighted Works.

89. Defendants were provided with notice of Hedgpeth's ownership of the copyrights to the Program on numerous occasions.

90. Upon information and belief, the City had knowledge of Ryan-Johnson's and Davis' infringing activities, which included the copying of Hedgpeth's Copyrighted Work and the creation of a derivative work based on Hedgpeth's Copyrighted Work.

91. Upon information and belief, the City provided material support for Ryan-Johnson's and Davis' infringement by providing direction or encouragement to create course materials for the LART program.

92. As a direct and proximate result of the City's infringement of Hedgpeth's Copyrighted Works, Hedgpeth is entitled to damages as well as the City's profits pursuant to 17 U.S.C. § 504(b).

93. Alternatively, and at Hedgpeth's election prior to any final judgment being entered, Hedgpeth is entitled to the maximum amount of statutory damages provided by law, $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c).

94. Hedgpeth is further entitled to recover his attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505.

95. The City's conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Hedgpeth great and irreparable injury that cannot fully be compensated or measured in money. Hedgpeth has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Hedgpeth is entitled to a preliminary and permanent injunction prohibiting further infringement of the Copyrighted Works.

## PRAYER FOR RELIEF

WHEREAS, Hedgpeth prays for judgment as follows:

(a) For a preliminary and permanent injunction enjoining Defendants and their respective officers, agents, servants, employees, and attorneys, and all persons in active convert or participation with each or any of them, from directly committing, aiding, encouraging, enabling, inducing,

causing, materially contributing to, or otherwise facilitating the unauthorized performance, reproduction, and distribution of Hedgpeth's Copyrighted Work;

(b) For all damages to which Hedgpeth may be entitled, including Defendants' profits, in such an amount that is proven at trial;

(c) Alternatively, at Hedgpeth's election, in lieu of actual damages and profits, statutory damages up to the maximum allowable amount under the law for each infringement pursuant to 17 U.S.C. § 504;

(d) For attorneys' fees and full costs in bringing this action; and

(e) For such other, further and different relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Hedgpeth hereby demands trial by jury on all issues raised by the Complaint.

Dated: November 20, 2019

Respectfully submitted,

LKP GLOBAL LAW, LLP

By: /s/ *Andrew B. Chen*
     Andrew B. Chen

Attorneys for Plaintiff
MARCUS HEDGPETH

**EXHIBIT 1**





Large Animal Response Team

# Horse Handling and Trailer Loading

Presented By

Marc Hedgpeth

Leslie Thomson

© Copyright 2008, Marc Hedgpeth, Equestrian Services
All rights reserved